IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TEXAS PEANUT FARMERS, *et al.*       )
                                     )
    Plaintiffs,                      )
                                     )
    vs.                              )    No. 03-445C
                                     )    (Judge Firestone)
THE UNITED STATES,                   )
                                     )
    Defendant.                       )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED

FEB 2 3 2004

U.S. COURT OF
FEDERAL CLAIMS

A TRUE COPY:
TEST: APR 4 2006
BRIAN BISHOP
Clerk, U.S. Court of Federal Claims
BY

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THIS COURT'S ORDER OF DISMISSAL AND DEFENDANT'S RESPONSE TO OTHER MOTIONS CONTAINED IN PLAINTIFFS' MOTION TO RECONSIDER

NOW COME Plaintiff Peanut Farmers and hereby reply to Defendant's Opposition to Plaintiffs' Motion to Reconsider as well as its Motion to Transfer the case to the appropriate federal district courts or alternatively a Motion to Stay this case pending resolution of the cases in various federal district courts.

### I.    INTRODUCTION

The Government Defendants complain that Plaintiff Peanut Farmers did not identify the various federal district courts to which this case could be transferred. Thereafter, on page 2 and footnote 2, the Government Defendants proceed to list each of the similar cases filed in the various federal district courts. This is not the first time that the Defendants have acknowledged the other pending suits. To now complain that the federal district courts are unidentified in Plaintiffs' Motion is of no consequence. The Defendants and this Court have been advised of the various pending cases in the various jurisdictions, and the case names and citations have been included not only in

1

Defendants' Opposition to Plaintiffs' Motion to Reconsider, but also in other various pleadings.

Defendants also claim that the cases are finally moving after repeated delays and that should be enough to give Plaintiff Peanut Farmers their day in court. This argument misses the point. In "Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' "Rule 12(b) Motion to Dismiss for Lack of Jurisdiction", Defendants indicated that they would raise any and all defenses including time bars. (See **Exhibit 1,** "Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendant's Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction", Page 17, and Page 7 of Defendant's Attached Exhibits.) As stated in the motion previously filed by Plaintiffs, Plaintiff Peanut Farmers should not be denied the opportunity to argue the substantive issues in this case because of a question over time bars where the Court has the authority to transfer the case.

## II.    MOTION TO RECONSIDER

Defendants also argue that the Motion filed by Plaintiffs is more appropriately styled a Motion to Reconsider under Rule 59(b). Plaintiffs do not concede that point and believe the Court can reconsider its ruling based on representations made by the Government and as is set forth in Plaintiffs' Memorandum. Defendants also claim the Plaintiffs request is untimely. If so, Plaintiffs would respectfully request that this Court extend time to file the motion due to numerous reasons including the fact that this Court's Order was dated December 16, 2003, but was not reviewed until some time thereafter due to numerous scheduling conflicts. (See, e.g., **Exhibit 2**). Defendants filed a barrage of motions, including motions for summary judgment and motions to stay in the federal

district courts in North Carolina, Virginia and Alabama. Also, undersigned counsel was dealing with family medical issues as well as the Christmas holiday season. Furthermore, to the extent Defendants complain of any untimeliness on the filing of the motion, Defendants can show no harm or disadvantage to the Defendants because of any alleged delayed. Accordingly, Plaintiffs request that the Court accept the motion as timely filed.

Defendants also argue that there is no allegation or claim for relief by Plaintiffs as to third party beneficiary, implied-in-fact contractual theory or a regulatory taking. Plaintiffs disagree. Plaintiffs alleged and will argue that in addition to a breach of contract theory, there were breaches of the regulatory requirements regarding the promises of insurance coverage and that Plaintiffs' reasonable and settled expectations caused a breach of an implied-in-fact contract as well as due process and third party beneficiary takings.

Moreover, Defendant again recently argued in a hearing that jurisdiction may lie in the Court of Federal Claims. See **Exhibit 3,** Transcript of Proceedings in <u>Clements v.</u> <u>Davidson</u>, Civil Action No. 2:03-CV-352, January 20, 2004 in which counsel for Defendants (these same Defendants) stated: "So it may change the jurisdictional juggling act, if you will, whether this Court even has jurisdiction," (**Page 16**); and "Well, it depends. It depends.. On their claims that would exceed - - you're basically now talking about a loss and a contract for money damages from the United States. Talking about jurisdiction, it may be in the Court of Claims. It is - - " (**Page 17**); and the Court's subsequent statement, " . . . the point Mr. Porter is making is if that's your claim isn't that a pleading that should be properly pleaded in the Court of Claims?" (**Page 27**).

### III.    MOTION TO TRANSFER

The Defendants also oppose the Plaintiffs' Motion to Transfer.  Plaintiffs concede that the issue of transfer was raised at the Telephone Hearing during July 2003.  (See Defendant's Opposition of Plaintiffs' Motion to Reconsider This Court's Order of Dismissal and Defendant's Response to Other Motions Contained in Plaintiffs' Motion to Reconsider", Page 6); (See also, **Exhibit 1,** Page 15 of the Appendix to "Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendant's Rule 12(b)(1) Motion".) Plaintiffs requested that the Court consider transferring the case as evidenced by Exhibit 1, Page 15, which was a submission to the Court for the telephone conference of July 25, 2003.  Plaintiffs were not aware of any allegation of the need to file a separate motion since it was discussed and requested during the telephone conference hearing of July 25, 2003.

Plaintiffs counsel recall advising the Court they only want to get past the jurisdictional issue and litigate the substantive issues.  Plaintiffs were willing for the Court to transfer the case then and now.  This position was reiterated in Virginia at the January 20, 2004, hearing:

> Mr. D. Boyce:  Judge, we don't care where it's heard.  We have filed in the Court of Federal Claims on behalf of five states.  They (the Government Defendants) argue that there is not jurisdiction there.  They're arguing here there's not jurisdiction here.  We don't care where this case is resolved. We even offered under the multidistrict litigation rules, pick a spot, tell us where to go, we'll argue it here, and then, if we need to, as the rules provide, farm it out to the different districts . . .The Court of Claims can send it down to the District Court or the District Court can send it up there. We don't care.  We just need a home, Judge." (See **Exhibit 3,** Transcript of Proceedings dated January 20, 2004, Pages 28-29.)

## V.    CONCLUSION

The real reason the Government so strenuously opposes transfer is set forth in their initial pleading in which they indicated they would assert time bars including defenses involving the statute of limitations (See **Exhibit 1, Pages 17 and 7).** The Government has delayed these proceedings through repeated requests for extensions of time and stays of filing responses. Now they want to assert time bars and statute of limitations as defenses in the federal district courts. This is unfair to Plaintiffs. As set forth in Plaintiffs' Motion, this Court can transfer the case in its entirety to the appropriate federal district courts. Such action is appropriate and just.

In its Reply Memorandum, Defendants failed to cite a single case which would preclude this Court from transferring the cases to the federal district courts. In the interest of justice, that is the appropriate remedy if the Court does not stay proceedings.

This the 20th day of February, 2004.

BOYCE & ISLEY, PLLC


R. Daniel Boyce
N. C. State Bar # 12329
Post Office Box 1990
Raleigh, NC 27602-1990
Telephone: (919) 833-7373
Facsimile: (919) 833-7536
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on Februry 20, 2004, 2004, I caused to be served by United States mail, postage prepaid, copies of the foregoing *PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THIS COURT'S ORDER OF DISMISSAL AND DEFENDANT'S RESPONSE TO OTHER MOTIONS CONTAINED IN PLAINTIFFS' MOTION TO RECONSIDER* addressed as follows:

JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**BOYCE & ISLEY, PLLC**

R. Daniel Boyce
N. C. State Bar # 12329
Post Office Box 1990
Raleigh, NC 27602-1990
Telephone: (919) 833-7373
Facsimile: (919) 833-7536
*Attorney for Plaintiffs*

6

No. 03-445C
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEXAS PEANUT FARMERS, et. al,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S RULE 12 (b)(1) MOTION
TO DISMISS FOR LACK OF JURISDICTION

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:
Kim Arrigo
United States Department
of Agriculture
Office of the General Counsel
Washington, D.C.

Mark Simpson
United States Department
of Agriculture
Office of the General Counsel
Atlanta, Georgia

JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Classification Unit
    8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-1011

September 15, 2003

Attorneys for Defendant



EXHIBIT
tabbies®

nd/or have filed in an inappropriate Federal district court.  To

he extent that there is any "ping-pong" of cases among the

istricts, it is plaintiffs' fault for filing in the incorrect

ourts in the first place.

In contrast, counsel for defendant and other Government

ttorneys have proceeded diligently, within the constraints of

heir schedules, to research various aspects of these cases,

ncluding jurisdiction.  As soon as we have completed our work

nd coordinated, we have informed plaintiffs' counsel of our

ositions.  See App. 3-8.  The burden is now upon plaintiffs to

etermine the correct Federal district court in which to file,

nd provide the information that the Government requested of

laintiffs (App. 3-8), so that both parties may proceed as

iligently as possible in the appropriate courts on various

ssues, including possible threshold issues of jurisdiction

depending upon the location of the farm), failure to

xhaustadministrative remedies,[12] and time-bars, as well as any

erits issues.

---

[12] Plaintiffs note correctly that the Government did not
aise, in our motion to dismiss, any issue of failure to exhaust
dministrative remedies.  However, as we informed plaintiffs'
ounsel in our letter dated August 15, 2003, we reserve the right
o raise that issue.

17

-5-

facts relating to other issues that are potentially
jurisdictional in nature (see discussion below):

1.  name of plaintiff[5/];
2.  address of farm (include county);
3.  address of residence (include county);
4.  farm number (number assigned by the Farm Services Agency
    (FSA) and any other pertinent numbers associated with the
    crop insurance program;
5.  name and address of plaintiff's insurance company;
6.  whether the plaintiff filed a claim with his or her
    insurance company (and if so, the date), and if so;
    a.  whether the claim was allowed (and if so, the date), or
    b.  whether the claim was denied (and if so, the date);
        and,
7.  whether the plaintiff filed any notice of appeal to the
    National Appeals Division (NAD), United States Department of
    Agriculture (and if so, the date).

    I believe that the most prudent course would be first to
clarify and correct these jurisdictional and other matters
before proceeding in any of the district courts on the merits or
any other matters.

    Other defenses.  We also wish to make clear that, even
though one or more of the plaintiffs may be named in the
appropriate district court, the Government reserves the right to
assert other defenses (which may or may not be jurisdictional in
nature), and if we prevail, these defenses would result in a
dismissal of that plaintiff's action.  These potential defenses
include: statute of limitations and/or other time-bars, and/or
failure to exhaust administrative remedies.

_____

    Please ensure the correct spelling of names.  For example,
for some of the plaintiffs in the complaint filed in the Court of
Federal Claims and also in the Eastern District of Texas, the
names are spelled differently.

    You should also be aware that there is an inconsistency in
your filings; for example, in the Texas complaint, some of the
named plaintiffs are listed in the caption of the complaint but
not listed in the text of the complaint, while some are in the
text of the complaint but not listed in the style of the caption.

7

# BOYCE & ISLEY, PLLC

### ATTORNEYS AT LAW
LAWYERS WEEKLY BUILDING, SUITE 100
POST OFFICE BOX 1990
RALEIGH, NORTH CAROLINA 27602-1990

G. Eugene Boyce
R. Daniel Boyce
Philip R. Isley
Laura Boyce Isley

107 Fayetteville Street Mall
Raleigh, North Carolina 27601

Telephone: (919) 833-7373
Facsimile: (919) 833-7536

July 25, 2003

VIA FACSIMILE AT 202.219.1474
The Honorable Nancy Firestone
Judge - United States Court of Federal Claims
717 Madison Place, NW
Washington, DC 20005

Re:  <u>Texas Peanut Farmers, *et al.* v. The United States</u>
No. 03-445C (Judge Firestone)

Dear Judge Firestone:

Per my conversation with your Clerk, enclosed please find an outline regarding the three (3) key statutes involved in the jurisdiction issue (28 U.S.C. § 1346, 28 U.S.C. § 1491, and 7 U.S.C. § 1506). I am providing these documents for the status conference to be held at 2:30 pm today. I advised the Government late yesterday afternoon (via facsimile-I was unable to reach Ms. Vanneman by telephone) that we oppose the motion. By copy of this facsimile I am also advising the Government of our position and suggesting some possible solutions.

As the Court is aware, this case was filed and served in early March, 2003. The Government's Motion to Dismiss, filed four months later, gave them ample opportunity to research and review this issue. We were not aware of the Government's position until late Monday afternoon (July 21, 2003). Obviously, Plaintiffs deserve some reasonable period of time to research and review this issue too. We are drafting a response opposing the Government's Motion to Dismiss for Lack of Jurisdiction and if necessary, we will file it upon instruction by the Court. I look forward to speaking with you at the status conference at 2:30 pm today.

With kindest personal regards, I remain

Very truly yours,

BOYCE & ISLEY, PLLC

R. Daniel Boyce

R. Daniel Boyce

bh
sures

Ms. Jane Vaneman, *via facsimile at 202.514.8624*

//

# PEANUT FARMERS vs. DEPARTMENT OF AGRICULTURE & OTHERS

**DEFENDANTS (identical in all lawsuits)**
Ross Davidson (Administrator for Risk Management Agency
Risk Management Agency
United States of America
United States Department of Agriculture
Ann M. Veneman, Secretary of Agriculture

**NOTE:**
**Federal Crop Insurance Corporation is NOT a party in any lawsuit**

**CLAIMS FOR RELIEF (identical in all lawsuits):**

Breach of contract  (Winstar)

Due Process violations by congressional act (Winstar)

Due Process violation by changing terms of contract but not giving timely notice and opportunity to be heard.

Violation of federal register notice & comment requirements of changes (federal regulatory violation)

**PRAYER FOR JUDGMENT (identical in all lawsuits):**

Breach of contract under Winstar seeking monetary damages-some may be less than $10,000 and some may be greater than $10,000

Injunctive Relief against the continued breach-- seeking enforcement of contract

/2

BOYCE & ISLEY PLLC

## KEY: CONCURRENT JURISDICTION, NOT EXCLUSIVE JURISDICTION ON SOME PLAINTIFFS AND SOME CLAIMS

### 28 USC 1491(a)(1) (COURT OF FEDERAL CLAIMS JURISDICTION)
#### ("Tucker Act")

Federal Court of claims has jurisdiction (concurrent, not exclusive??) to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States

### 28 USC 1346 (a)(2) (DISTRICT COURT JURISDICTION)
#### ("Little Tucker Act")

District Courts possess original jurisdiction <u>concurrent</u> with the Court of Federal Claims in cases in which the amount claimed from the United States does not exceed $10,000 founded upon either the Constitution, any Act of Congress or any regulation of executive department, or upon any express or implied contract with the United States

### 7 USC 1506(d): FCIC statute
Exclusive jurisdiction lies in Federal District Courts of all suits brought by or against the Corporation (over FCIC only—not a party to this lawsuit)

13

**GOAL:**

Promote judicial economy and preserving court resources; as well as efficiency for Plaintiff peanut farmers, Defendant government & its officials and the parties' attorneys

**TIMELINE:**

| | |
|---|---|
| 11/19/02 | NC/Va Peanut Farmers chose to file Complaint in Federal District Court for Eastern District of North Carolina (EDNC) |
| 1/16/03 | NC/Va Answer filed by government in EDNC |
| ??? | Separate complaint filed by Alabama farmer Watford (different attorneys) |
| 2/19/03 | Texas & other states' Peanut Farmers chose to file complaint in Court of Federal Claims (CFC) |
| 6/5/03 | NC/Va case: motion for partial summary judgment pending (Government asking for stay to respond pending Court of Federal Claims ruling on jurisdiction) |
| 6/12/03 | Alabama joint motion by Government & plaintiffs to stay Alabama case until Court of Federal Claims rules on jurisdiction? |
| 7/21/03 | Texas & other states case: Government files motion to dismiss for lack of jurisdiction in Court of Federal Claims; says *exclusive (not concurrent)* jurisdiction lies in federal district court |
| 7/25/03 | CFC status conference on jurisdiction |

Now, the Government says there is no jurisdiction at all in Court of Federal Claims, so there is no longer any reason to delay Government's filing a response on motion for summary judgment and allow EDNC Judge Howard to rule.

## POSSIBLE SOLUTIONS:

Option 1:  Stay this lawsuit and proceed with Motion for Summary Judgment on key issues to be heard by Judge Howard: Does Winstar control and was there a breach of contract?  This ruling could be dispositive of all cases (ruling would be collateral estoppel/ res judicata against the government)

Option 2:  Related cases pending in different federal courts may be consolidated in a single district by a transfer of venue.  Under 28 USC Section 104(a), "the court may... in the interests of justice transfer any civil action to any other district or division where it might have been brought."  (Plaintiffs' choice of forum is, however, entitled to substantial deference--see. Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947)). *

Option 3:  Multi-district litigation rules under 28 USC Section 1407 regarding consolidation or transfer of cases to a single district court to promote the just and efficient conduct of such actions— eliminate duplication in discovery, avoid conflicting rulings and schedules. reduce litigation cost and save time and effort on the part of the parties, the attorneys, witnesses, and the courts.

*NOTE: Same rules for Court of Federal Claims/District Court cases under 28 USC Section 1631 (referring to 28 USC Section 610).

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE **FILED**

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

DEC - 5 2003

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| ALABAMA PEANUT FARMERS: <br> TERRY E. BEASLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROSS J. DAVIDSON, etc., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION NO. 03-T-500-S <br> ) <br> ) <br> ) <br> ) |

## ORDER

It is ORDERED that the motion to dismiss and alternative motion for summary judgment filed by defendants on November 26, 2003 (Doc. No. 17), are set for submission, without oral argument, on December 31, 2003, with the plaintiffs to file their brief and evidentiary materials by said date.

DONE, this the __5TH__ day of December, 2003.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

**EXHIBIT**
2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK AND NEWPORT NEWS DIVISIONS
FILE NO. 2:03-CV-352

TOM CLEMENTS; JIM FERGUSON; GLEN            )
HAWKINS; BILLY BAIN; GLEN MOORE;            )
R. L. SMITH; H. STEPHEN ALLEN and           )
OTHERS SIMILARLY SITUATED,                  )
                         Plaintiffs,        )
                                            )
        v.                                  )
                                            )
ROSS J. DAVIDSON, ADMINISTRATOR FOR         )
RISK MANAGEMENT AGENCY, RISK                )
MANAGEMENT AGENCY, UNITED STATES            )
OF AMERICA, ANN M. VENEMAN,                 )
SECRETARY OF AGRICULTURE FOR THE            )
UNITED STATES OF AMERICA and UNITED         )
STATES DEPARTMENT OF AGRICULTURE,           )
                         Defendants.        )

---

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO GOVERNMENT PLEADINGS FILED IN DECEMBER, 2003

---

NOW COME the Plaintiffs in the above-captioned matter and respectfully request that this Honorable Court extend the time to January 31, 2004 to file responses to all motions filed by the Government in late December, 2003. In support of this Motion, counsel for Plaintiffs show the Court as follows:

1.      The Government filed a Motion for a Protective Order or a Stay, Objections to Plaintiffs' Discovery Requests, and Opposition to Plaintiffs' Motion for Summary Judgment. These documents were filed just prior to and during the holiday season (December 22 and December 29, 2003) and undersigned counsel has not had the opportunity to completely respond to all the motions filed.

2.      Undersigned counsel attempted to determine the Government's position on this matter.   The Government refused to agree to an extension until January 31, 2004 and indicated it would only stipulate to an extension of time up to and including January 14, 2004.   Therefore, Plaintiffs have no alternative but to seek court intervention.

3.      Earlier undersigned counsel agreed to provide the Government a 30 day extension of time to file a reply to Plaintiffs' Response even though the Government would only agree to a two (2) week extension of time for Plaintiffs to file their Response.

WHEREFORE, for good cause, it is hereby requested that this Honorable Court extend time for responding to all these motions up through and including January 31, 2004.

Dated this ___8th___ day of __January_____, 2004.

BOYCE & ISLEY, PLLC


R. Daniel Boyce
N. C. State Bar # 12329
Post Office Box 1990
Raleigh, North Carolina  27602-1990
Telephone:  (919) 833-7373
Facsimile:  (919) 833-7536
*Attorney for Plaintiffs*


Mr. J. Brian Donnelly
Virginia State Bar # 1048
PRICE, PERKINS, LARKIN &
DONNELLY
Lynwood Plaza, Suite 350
621 Lynnhaven Parkway
Virginia Beach, VA  23452

*Local Counsel for Plaintiffs*

2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a copy of the foregoing *Plaintiffs' Motion for Extension of Time to Respond to Government Pleadings Filed in December, 2003* was served upon counsel of record in this action by~~hard delivery and~~ depositing a copy thereof in the United States mail, postage prepaid, and addressed as follows:

> Kent P. Porter
> Assistant United States Attorney
> 8000 World Trade Center
> 101 W. Main Street
> Norfolk, Virginia 23510

This the __8th__ day of __January__, 2004.

R. Daniel Boyce

R. Daniel Boyce

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 4:02-CV-159-H(4)

FILED
JAN 1 6 2004
BY
US DISTRICT COURT, E.N.C.
DEP. CLK

| | |
|---|---|
| MARVIN TAYLOR BARNHILL, JERRY HAMILL, JOHN BRANHAM, CLARK JENKINS, TOM CLEMENTS, DAVID GRANT, TIM PHELPS, TOMMY FLYTHE, JIM FERGUSON, GLEN HAWKINS, BILLY BAIN, GLEN MOORE, R. L. SMITH, H. STEVEN ALLEN, AND OTHERS SIMILARLY SITUATED,<br><br>               Plaintiffs,<br><br>vs.<br><br>ROSS J. DAVIDSON, ADMINISTRATOR FOR RISK MANAGEMENT AGENCY, RISK MANAGEMENT AGENCY, UNITED STATES OF AMERICA, ANN M. VENEMAN, SECRETARY OF AGRICULTURE FOR THE UNITED STATES OF AMERICA, and UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO
FILE RESPONSES TO GOVERNMENTS' PLEADINGS
AND REQUEST FOR STATUS CONFERENCE**

NOW COME the Plaintiffs in the above captioned matter and respectfully move for an extension of time to file responses to the pleadings recently filed by the Government. Plaintiffs also request a status conference regarding the case. In support of this Motion, the Plaintiffs show the Court as follows:

1.    The Complaint was filed on November 19, 2002.

2.    The Government had filed its Answer on January 16, 2003.

3.    On December 29, 2003 and January 2, 2004, the Government filed the following motions and pleadings:

      (a)    Defendants' Opposition to Motion to Compel Discovery
      (b)    Motion to Dismiss or Alternative for Summary Judgment, and Supporting Memorandum
      (c)    Defendants' Opposition to Plaintiffs' Motion For Class Certification,
      (d)    Defendants' Opposition to Motion for Partial Summary Judgment, Plaintiffs' Motion to Enter Judgment and Plaintiffs' Second Motion for Entry of Judgment
      (e)    Defendants' Motion for Protective Order With Supporting Memorandum

4.    Undersigned counsel has been dealing with a number of cases and family issues and has not had the opportunity to fully review the Government's pleadings and prepare responses or replies.

5.    Assistant U.S. Attorney Eric Goulian advises he does not oppose this Motion for Extension of Time to respond.

6.    Plaintiffs also respectfully request a status conference to sort out many of the issues including discovery and hearings on the Motions for Summary Judgment.  This case is complex and involves a number of issues that need the Court's attention but cannot be adequately explained in writing.

WHEREFORE, the Plaintiffs respectfully request an extension of time of at least ten (10) days up to and including January 30, 2004, to file responses to all the Government Motions, and Plaintiffs request a status conference as soon as possible.

This the ___16th___ day of January, 2004.

                                    BOYCE & ISLEY, PLLC


                                   R. Daniel Boyce
                                   N. C. State Bar # 12329
                                   Post Office Box 1990
                                   Raleigh, North Carolina  27602-1990
                                   Telephone:  (919) 833-7373
                                   *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a copy of the foregoing Motion to Amend Complaint to Add Additional Defendants was served upon counsel of record in this action by hand delivery to the parties as follows:

> Eric D. Goulian
> Assistant United States Attorney
> Suite 800, Federal Building
> 310 New Bern Avenue
> Raleigh, NC 27601-1464

This the 16th day of January, 2004.

R. Daniel Boyce
N. C. State Bar # 12329

1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
2                              NORFOLK DIVISION

3

4    TOM CLEMENTS, et al.,                )
                                          )
5                        Plaintiffs,      )
                                          )    CIVIL ACTION
6         v.                              )    NO. 2:03cv352
                                          )
7    ROSS J. DAVIDSON, et al.,            )
                                          )
8                        Defendants.      )

9

10

11

12                   TRANSCRIPT OF PROCEEDINGS

13                       Norfolk, Virginia

14                       January 20, 2004

15

16   Before:    THE HONORABLE F. BRADFORD STILLMAN
                United States Magistrate Judge
17

18

19   Appearances:

20              PRICE, PERKINS, LARKIN & DONNELLY
                By:  J. BRIAN DONNELLY, ESQUIRE
21                        and
                BOYCE & ISLEY
22              By:  ROBERT DANIEL BOYCE, ESQUIRE
                     GORDON EUGENE BOYCE, ESQUIRE
23                   Counsel for the Plaintiffs

24              U. S. ATTORNEY'S OFFICE
                By:  KENT P. PORTER, ESQUIRE
25                   Assistant United States Attorney

EXHIBIT
3

                    PENNY C. WILE, RMR, CRR
                    OFFICIAL COURT REPORTER

15

1           What happens is you have a basic provision and you

2     have a Crop Insurance Policy provision.  As to the peanuts,

3     what it says is your maximum insurance coverage at the quota

4     price election -- and that's significant, at the quota price --

5     which there was no dispute that it was 31 cents in the year

6     2001, and, quite frankly, Your Honor, there is no dispute that

7     the quota price election was 31 cents in 2002, but what

8     happened was the ability under the policies to obtain the quota

9     price election for insurable losses depended on whether the

10    Farm Service Agency had assigned to the farms that the

11    plaintiffs operated a marketing quota for peanuts.  The

12    operative change was not to change what was in these policies.

13    The change occurred when the Farm Bill said, you know, we're

14    not having quota peanuts anymore.

15           THE COURT:  Was the Farm Bill passed after these

16    folks put their crops in the ground?

17           MR. PORTER:  The Farm Bill was passed May 13th.

18           THE COURT:  That's in the growing season, isn't it?

19           MR. PORTER:  I believe as to most, if not all, of

20    these Virginia farmers that is after the growing season.  I

21    believe it is.  There are particular dates that had planting

22    days.  Mr. Boyce will probably be able to answer that.  But I

23    believe that's probably correct.

24           So what happens is the quota goes away as of May 13

25    or 15 of the year 2002.

THE COURT:  Is this legislation that was enacted

inconsistent with previous regulations regarding notice that

would have provided the growers with some indication that the

policy would be the same unless they received notice by a

particular date?

MR. PORTER:  Well, again, it is our position, and

again this is something Judge Friedman will have to resolve, is

that the policy has never changed.  What has changed is the

Quota Peanut Program.  And to the extent that the plaintiffs,

the farmers, want to challenge the elimination of the Quota

Peanut Program, then by all means they should do so.  They

should do so and allege the jurisdictional basis.  That is not

an insignificant point because under the Federal Crop Insurance

Act the jurisdiction for issues over crop insurance came to the

District Courts exclusively.  It changed the way things used to

run, and it put all the jurisdiction for crop insurance claims

within the District Court.

If they want to challenge the loss of the Quota

Program, you're no longer talking about a crop insurance issue.

So it may change the jurisdictional juggling act, if you will,

whether this court even has jurisdiction.  So it's not an

insignificant point, Your Honor, just to say, well, the quota

is gone and they can challenge it through the Crop Insurance

Program.  It's not insignificant at all.

THE COURT:  Where would they go?

1    MR. PORTER: Well, it depends. It depends. On their
2    claims that would exceed -- you're basically now talking about
3    a loss and a contract for money damages from the United States.
4    Talking about jurisdiction, it may be in the Court of Claims.
5    It is --
6        THE COURT: They have an action in the Court of
7    Claims right now.
8        MR. PORTER: Not these peanut farmers, but there are
9    peanut farmers who have a claim right now in the Federal Court
10   of Claims regarding -- well, I think they're captioned Quota
11   Holders Association or something, but they have a case right
12   now in the Court of Claims alleging the loss of the Quota
13   Program.
14       To the extent what we would suggest that this is
15   really trying to get at that through a different avenue, it
16   starts to look like the square peg in the round hole in our
17   judgment. It's starting to look like trying to challenge the
18   Quota Program via the jurisdictional provisions of the Federal
19   Crop Insurance Act. Again, these are issues that ultimately
20   Judge Friedman will need to decide whether he believes it is a
21   correct interpretation or an incorrect interpretation, whether
22   the Agency is right to apply the application of the 2002 Farm
23   Bill to these policies or whether it was wrong to do so. So
24   there are a lot of issues that float around on the fringes as
25   to quota. To the extent -- again, to the extent we're really

1      MR. PORTER:  Well, it depends.  It depends.  On their

2  claims that would exceed -- you're basically now talking about

3  a loss and a contract for money damages from the United States.

4  Talking about jurisdiction, it may be in the Court of Claims.

5  It is --

6      THE COURT:  They have an action in the Court of

7  Claims right now.

8      MR. PORTER:  Not these peanut farmers, but there are

9  peanut farmers who have a claim right now in the Federal Court

10 of Claims regarding -- well, I think they're captioned Quota

11 Holders Association or something, but they have a case right

12 now in the Court of Claims alleging the loss of the Quota

13 Program.

14      To the extent what we would suggest that this is

15 really trying to get at that through a different avenue, it

16 starts to look like the square peg in the round hole in our

17 judgment.  It's starting to look like trying to challenge the

18 Quota Program via the jurisdictional provisions of the Federal

19 Crop Insurance Act.  Again, these are issues that ultimately

20 Judge Friedman will need to decide whether he believes it is a

21 correct interpretation or an incorrect interpretation, whether

22 the Agency is right to apply the application of the 2002 Farm

23 Bill to these policies or whether it was wrong to do so.  So

24 there are a lot of issues that float around on the fringes as

25 to quota.  To the extent -- again, to the extent we're really

1    pound.

2             The contract change date is in November of 2001.  It

3    passes.  The crop established price in that election and

4    addendum, it's announced, and they send out these things in

5    November and December saying price election will be 31 cents

6    per pound.  RMA sends a notice saying -- RMA is Risk Management

7    Agency, one of the defendants -- price election will be at 31

8    cents a pound.  They announce the peanut quota support price

9    identical to the previous year.  It calculates to 31 cents a

10   pound.  The cancellation and termination date passes.  It's

11   still 31 cents a pound.  The sales closing date passes.  It's

12   still 31 cents a pound.  The policy declaration, the addendum,

13   is sent out by the brokers saying 31 cents a pound.  And the

14   initial planting date passes, and it's still 31 cents a pound.

15            THE COURT:  Then Congress directs these agencies and

16   says which by legislation whatever you said doesn't matter

17   because we have amended --

18            MR. PORTER:  Exactly.

19            THE COURT:  -- the law.

20            MR. D. BOYCE:  Right.

21            THE COURT:  Well, I accept all that, but the point

22   Mr. Porter is making is if that's your claim isn't that a

23   pleading that should be properly pleaded in the Court of

24   Claims?  Why are you arguing with an Agency that's legs have

25   been knocked out from under it by Congress?

1       MR. D. BOYCE:  Judge, we don't care where it's heard.

2   We have filed in the Court of Federal Claims on behalf of five

3   states.  They argue that there's not jurisdiction there.

4   They're arguing here there's not jurisdiction here.  We don't

5   care where this case is resolved.  We even offered under the

6   multidistrict litigation rules, pick a spot, tell us where to

7   go, we'll argue it here, and then, if we need to, as the rules

8   provide, farm it out to the different districts, we'll do that.

9   And that offer was rejected.  I do not fault Mr. Porter.  He's

10  kind of the last one in the game here.  This case was filed way

11  before this action in North Carolina, on behalf of North

12  Carolina, Virginia, and South Carolina farmers, because RMA,

13  the RMA head office, is in the Eastern District.

14      MR. PORTER:  Your Honor --

15      MR. D. BOYCE:  I don't fault Mr. Porter, but the

16  Department of Justice has essentially told us we're going to

17  raise each and every possible defense, every possible technical

18  defense, we can.  And at the same time --

19      THE COURT:  Is there a jurisdiction transfer statute

20  that would allow this court to transfer a properly pleaded

21  action from this court to the Court of Claims?

22      MR. D. BOYCE:  Yes, sir.  We have asked the Court of

23  Federal Claims to reconsider because we think there is

24  concurrent jurisdiction, and the Court can either -- the Court

25  of Claims can send it down to the District Court or the

1    District Court can send it up there.  We don't care.  We just

2    need a home, Judge.

3          Let me tell you what's going on on the administrative

4    record issue.  On April the 17th we wrote the Secretary of

5    Agriculture, the Regional Office Director, the Administrative

6    Office.  And I'm not going to go through all the letters and

7    petitions we filed, but it's contained in our response to

8    defendants' motion to dismiss or in the alternative summary

9    judgment starting at page 9 and running through page 11.  And

10   we show our efforts to comply with whatever administrative

11   remedies there might be.

12         On April the 7th we wrote them and we said if this

13   claim is denied please allow this to serve as a notice of

14   appeal to the National Appeals Division.

15         On April 29th we wrote another letter to them

16   again -- the first one we filed a petition on behalf of several

17   hundred farmers.

18         We wrote again on April 29th.  Each of these letters

19   are attached as exhibits to our memorandum on summary judgment.

20         We wrote again on November 17, February 13, February

21   21, April 17.  Excuse me.  Those are their responses.  We wrote

22   repeatedly requesting hearings and requesting appeals if it's

23   denied.

24         The Wiley v. Glickman case, they faced the same

25   argument up there.  The District Court Judge in Wiley v.