# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

JUL 2 1 2003

U.S. COURT OF
FEDERAL CLAIMS

TEXAS PEANUT FARMERS et. al,        )
                                     )
            Plaintiff,               )
                                     )
        v.                           ) No. 03-445C
                                     ) (Judge Firestone)
    THE UNITED STATES,               )
                                     )
            Defendant.               )

## DEFENDANT'S RULE 12(b)(1) MOTION
## TO DISMISS FOR LACK OF JURISDICTION

Defendant respectfully requests that this Court dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) for lack of jurisdiction.

## STATEMENT OF THE ISSUE

Whether this Court should dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) for lack of jurisdiction, because the Federal district courts, pursuant to 7 U.S.C. § 1506(d), possess exclusive original jurisdiction, without regard to the amount in controversy, to entertain plaintiffs' claims against the Federal Crop Insurance Corporation (FCIC).

## NATURE OF THE CASE

Plaintiffs are peanut farmers in various states (including Texas, Georgia, Alabama, Florida, and South Carolina) who insured their 2001-2002 peanut crops under Multiple Peril Crop Insurance (MPCI) policies, which cover against crop losses due to weather-

1

related conditions.  MPCI is issued by private insurers and is reinsured by the Federal Crop Insurance Corporation (FCIC).  The Risk Management Agency (RMA), a component of the United States Department of Agriculture (USDA), is responsible for overseeing the FCIC and administering the MPCI program.

For the 2002 and prior crop years, the MPCI coverage level for peanuts varied depending upon whether the lost crops were "quota" or "non-quota" peanuts.  This distinction reflected the fact that, under the Federal peanut price support program, farms were assigned poundage quotas restricting the amount of peanuts that could be marketed without financial penalties.  Thus, under the MPCI policy, the coverage rate for quota peanuts was $0.31 per pound, and the coverage rate for non-quota ("additional") peanuts was $0.16 per pound.

The dispute in this case arises from the fact that Congress, in the 2002 Farm Bill enacted on May 13, 2002, Pub. L. 107-171, 116 Stat. 182, repealed the peanut quota program and provided that the non-quota price election for certain peanuts would be $.1775 per pound, which price would be used for all aspects of the policy relating to the calculations of premium, liability and indemnities.  Section 1310(c), Appendix (App.) 2-3.  As a result of the elimination of the peanut quota program, all peanuts became "non-quota" peanuts subject to the lower MPCI coverage rate (which the Farm Bill had raised from $0.16 to $0.1775 per

2

pound).  Notwithstanding the fact that quota peanuts no longer exist, plaintiffs claim that they are entitled to the higher $0.31 rate for quota peanuts, and that payments for their lost crops for 2001-02 at the lower non-quota rate violates their contractual and due process rights.[1]

Plaintiffs allege breach of contract (Counts 1 and 2) and due process theories (count 3).  Plaintiffs also allege violations of notice and comment provisions relating to publication in the Federal Register of proposed changes to their insurance policies (counts 4-5) and violation of their due process rights by a failure to notify plaintiffs of their right to appeal (count 6).  They seek money damages and payment of the difference between $.17 and $.31 per pound for their lost peanut crops.

---

[1]    Plaintiffs' attorneys have filed nearly identical complaints in at least seven other Federal district courts on behalf of peanut farmers in North Carolina, Texas, Alabama, Georgia, Florida, Virginia, and South Carolina.  See Barnhill v. Davidson, No. 4:02-CV-159-H(4)(E.D. N.C.); Billy M. Barnes, et al. v. Davidson, et al., No. 2-03CV-120 (E.D. TX.); Terry E. Beasley, et al. v. Davidson, et al., No. CV-03-B-500-S (M.D. Ala.); Bradford L. Carroll, et al. v. Davidson, et al., No. 1-03-CV-1263 (N.D. Ga.); James C. Barnes, et al. v. Davidson, et al., No. 5:03-CV-107-SPM (N.D. Fla.); Wallace A. Berry, et al. v. Davidson, et al., No. 3-03-1631-10 (D.S.C.); Tom Clements et al. v. Ross J. Davidson, Civil Action No. 2:03cv352 (E.D. Va).  A case presenting the identical claims filed by different attorneys is also pending in the Middle District of Alabama: Joey Watford, et al. v. Davidson, et al., No. 03-M-153-S (M.D. Ala.).

ARGUMENT

The plaintiffs in this case have invoked the jurisdiction of this Court under 28 U.S.C. §1491(a)(1), which provides for exclusive jurisdiction of contract claims against the United States exceeding $10,000.  Complaint (Compl. ¶18).  See App. 5; see 28 U.S.C. § 1346 (a)(2), App. 4.

The rule has long been that, under the Tucker Act, 28 U.S.C. §1491(a)(1), the Court of Federal Claims possesses exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is founded upon either the Constitution or upon any express or implied contract with the United States.  E.g., Eastern Enterprises v. Apfel, 524 US 498, 519-20 (1998).  This rule applies unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute.  Id., citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984).

In the statute governing FCIC matters, 7 U.S.C. §1506(d), Congress withdrew Tucker Act jurisdiction.  Section 1506(d) provides:

> The Corporation, . . . may sue and be sued in its corporate name, . . . The district courts of the United States, . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation.  Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

4

App. 1 (emphasis added).  Therefore, the statute creating the
FCIC and governing the crop insurance program not only expressly
granted original jurisdiction to the Federal district courts, but
granted original jurisdiction that was "exclusive."  Id.  See
generally American Growers Insurance Co v. Federal Crop Insurance
Corporation, 210 F. Supp. 2d 1088 (S. D. Iowa, 2002); see also
Farmers & Merchants Bank of Eatonton, Georgia v. United States,
43 Fed. Cl. 38 (1990) (construing 7 U.S.C. §6999 (1994), other
provisions governing review of FCIC determinations). Further,
section 1506(d) provides for this original exclusive jurisdiction
"without regard to the amount in controversy."  There could be no
other purpose for this exclusive jurisdictional provision other
than a withdrawal from this Court of Tucker Act jurisdiction
relating to claims involving the FCIC, no matter what amount is
in controversy.

        Accordingly, this Court lacks jurisdiction to entertain
plaintiffs' claims.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court dismiss plaintiffs' complaint for lack of jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:  Classification Unit
       8th Floor
1100 L Street, N.W.
Washington, D.C.  20530
Tele: (202) 307-1011
Facsimile: (202) 514-8624

Attorneys for Defendant

Kim Arrigo
United States Department
  of Agriculture
Office of the General
  Counsel
Washington, D.C.

Mark Simpson
United States Department
  of Agriculture
Office of the General
  Counsel
Atlanta, Georgia

July 21, 2003

6

# APPENDIX

INDEX TO APPENDIX

|  | Page |
|---|---|
| 7 U.S.C. § 1506(d) | 1 |
| 2002 Farm Bill, Pub. L. 107-171, 116 Stat. 182, Section 1310(c) | 2 |
| 28 U.S.C. §1491(a)(1) | 4 |
| 28 U.S.C. § 1346(a)(2) | 5 |

7 USCA S 1506
7 U.S.C.A. § 1506

C

UNITED STATES CODE ANNOTATED
TITLE 7. AGRICULTURE
CHAPTER 36—CROP INSURANCE

Copr. © West Group 2003. No claim to Orig. U.S. Govt. Works.

Current through P.L. 108-23, approved 05-19-03

§ 1506. General powers

(a) Succession

The Corporation shall have succession in its corporate name.

(b) Corporate seal

The Corporation may adopt, alter, and use a corporate seal, which shall be judicially noticed.

(c) Property

The Corporation may purchase or lease and hold such real and personal property as it deems necessary or convenient in the transaction of its business, and may dispose of such property held by it upon such terms as it deems appropriate.

(d) Suit

The Corporation, subject to the provisions of section 1508(j) of this title, may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property. The district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation. The Corporation may intervene in any court in any suit, action, or proceeding in which it has an interest. Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

(e) Bylaws and regulations

The Corporation may adopt, amend, and repeal bylaws, rules, and regulations governing the manner in which its business may be conducted and the powers granted to it by law may be exercised and enjoyed.

(f) Mails

The Corporation shall be entitled to the use of the United States mails in the same manner as the other executive agencies of the Government.

(g) Assistance

The Corporation, with the consent of any board, commission, independent establishment, or executive department of the Government, including any field service thereof, may avail itself of the use of information, services, facilities, officials, and employees thereof in carrying out the provisions of this chapter.

(h) Collection and sharing of information

(1) Surveys and investigations

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

/

PUBLIC LAW 107–171—MAY 13, 2002

(1) ADMINISTRATIVE PROVISIONS.—Section 361 of the Agricultural Adjustment Act of 1938 (7 U.S.C. 1361) is amended by striking "peanuts,".

(2) ADJUSTMENT OF QUOTAS.—Section 371 of the Agricultural Adjustment Act of 1938 (7 U.S.C. 1371) is amended—

(A) in the first sentence of subsection (a), by striking "peanuts,"; and

(B) in the first sentence of subsection (b), by striking "peanuts".

(3) REPORTS AND RECORDS.—Section 373 of the Agricultural Adjustment Act of 1938 (7 U.S.C. 1373) is amended—

(A) in the first sentence of subsection (a)—

(i) by striking "peanuts," each place it appears;

(ii) by inserting "and" after "from producers,"; and

(iii) by striking "for producers, all" and all that follows through the period at the end of the sentence and inserting "for producers."; and

(B) in subsection (b), by striking "peanuts,".

(4) EMINENT DOMAIN.—Section 378(c) of the Agricultural Adjustment Act of 1938 (7 U.S.C. 1378(c)) is amended in the first sentence—

(A) by striking "cotton," and inserting "cotton and"; and

(B) by striking "and peanuts,".

7 USC 7960.

SEC. 1310. REPEAL OF SUPERSEDED PRICE SUPPORT AUTHORITY AND EFFECT OF REPEAL.

(a) REPEAL OF PRICE SUPPORT AUTHORITY.—

(1) IN GENERAL.—Section 155 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 7271) is repealed.

(2) CONFORMING AMENDMENTS.—The Agricultural Act of 1949 (7 U.S.C. 1441 et seq.) is amended—

(A) in section 101(b) (7 U.S.C. 1441(b)), by striking "and peanuts"; and

(B) in section 408(c) (7 U.S.C. 1428(c)), by striking "peanuts,".

(3) TECHNICAL AMENDMENT.—The chapter heading of chapter 2 of subtitle D of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. prec. 7271) is amended by striking "**PEANUTS AND**".

(b) DISPOSAL.—Notwithstanding any other provision of law or previous declaration made by the Secretary, the Secretary shall ensure that the disposal of all peanuts for which a loan for the 2001 crop of peanuts was made under section 155 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 7271) before the date of enactment of this Act is carried out in a manner that prevents price disruptions in the domestic and international markets for peanuts.

(c) TREATMENT OF CROP INSURANCE POLICIES FOR 2002 CROP YEAR.—

(1) APPLICABILITY.—This subsection shall apply for the 2002 crop year only notwithstanding any other provision of law or crop insurance policy.

(2) PRICE ELECTION.—The nonquota price election for segregation I, II, and III peanuts shall be 17.75 cents per pound

and shall be used for all aspects of the policy relating to the calculations of premium, liability, and indemnities.

(3) QUALITY ADJUSTMENT.—For the purposes of quality adjustment only, the average support price per pound of peanuts shall be a price equal to 17.75 cents per pound. Quality under the crop insurance policy for peanuts shall be adjusted under procedures issued by the Federal Crop Insurance Corporation.

# Subtitle D—Sugar

## SEC. 1401. SUGAR PROGRAM.

(a) EXTENSION AND MODIFICATION OF EXISTING SUGAR PROGRAM.—Section 156 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 7272) is amended to read as follows:

### "SEC. 156. SUGAR PROGRAM.

"(a) SUGARCANE.—The Secretary shall make loans available to processors of domestically grown sugarcane at a rate equal to 18 cents per pound for raw cane sugar.

"(b) SUGAR BEETS.—The Secretary shall make loans available to processors of domestically grown sugar beets at a rate equal to 22.9 cents per pound for refined beet sugar.

"(c) LOAN RATE ADJUSTMENTS.—

"(1) IN GENERAL.—The Secretary may reduce the loan rate specified in subsection (a) for domestically grown sugarcane and subsection (b) for domestically grown sugar beets if the Secretary determines that negotiated reductions in export subsidies and domestic subsidies provided for sugar of other major sugar growing, producing, and exporting countries in the aggregate exceed the commitments made as part of the Agreement on Agriculture.

"(2) EXTENT OF REDUCTION.—The Secretary shall not reduce the loan rate under subsection (a) or (b) below a rate that provides an equal measure of support to that provided by other major sugar growing, producing, and exporting countries, based on an examination of both domestic and export subsidies subject to reduction in the Agreement on Agriculture.

"(3) ANNOUNCEMENT OF REDUCTION.—The Secretary shall announce any loan rate reduction to be made under this subsection as far in advance as is practicable.

"(4) DEFINITIONS.—In this subsection:

"(A) AGREEMENT ON AGRICULTURE.—The term "Agreement on Agriculture" means the Agreement on Agriculture referred to in section 101(d)(2) of the Uruguay Round Agreements Act (19 U.S.C. 3511(d)(2)), or any amendatory or successor agreement.

"(B) MAJOR SUGAR COUNTRIES.—The term "major sugar growing, producing, and exporting countries" means—

"(i) the countries of the European Union; and

"(ii) the 10 foreign countries not covered by subparagraph (A) that the Secretary determines produce the greatest quantity of sugar.

"(d) TERM OF LOANS.—

by any law, to enforce the right of citizens of the United States to vote in all the States.
(June 25, 1948, c. 646, 62 Stat. 932.)

## § 1345. United States as plaintiff

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.
(June 25, 1948, c. 646, 62 Stat. 933.)

## § 1346. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person,

would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

(d) The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

(e) The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(4), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1986.

(f) The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

(g) Subject to the provisions of chapter 179, the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title.
(June 25, 1948, c. 646, 62 Stat. 933; Apr. 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a), (b), 63 Stat. 101; Oct. 31, 1951, c. 655, § 50(b), 65 Stat. 727; July 30, 1954, c. 648, § 1, 68 Stat. 589; July 7, 1958, Pub.L. 85–508, § 12(e), 72 Stat. 348; Aug. 30, 1964, Pub.L. 88–519, 78 Stat. 699; Nov. 2, 1966, Pub.L. 89–719, Title II, § 202(a), 80 Stat. 1148; July 23, 1970, Pub.L. 91–350, § 1(a), 84 Stat. 449; Oct. 25, 1972, Pub.L. 92–562, § 1, 86 Stat. 1176; Oct. 4, 1976, Pub.L. 94–455, Title XII, § 1204(c)(1), Title XIII, § 1306(b)(7), 90 Stat. 1697, 1719; Nov. 1, 1978, Pub.L. 95–563, § 14(a), 92 Stat. 2389; Apr. 2, 1982, Pub.L. 97–164, Title I, § 129, 96 Stat. 39; Sept. 3, 1982, Pub.L. 97–248, Title IV, § 402(c)(17), 96 Stat. 669; Oct. 22, 1986, Pub.L. 99–514, § 2, 100 Stat. 2095; Oct. 29, 1992, Pub.L. 102–572, Title IX, § 902(b)(1), 106 Stat. 4516; Apr. 26, 1996, Pub.L. 104–134, Title I, § 101[(a)][Title VIII, § 806], 110 Stat. 1321–75; renumbered Title I May 2, 1996, Pub.L. 104–140, § 1(a), 110 Stat. 1327, and amended Oct. 26, 1996, Pub.L. 104–331, § 3(b)(1), 110 Stat. 4069.)

## HISTORICAL AND STATUTORY NOTES

### Senate Revision Amendment

The provisions of Title 28, U.S.C., section 932, which related to application of the Federal Rules of Civil Procedure, were originally set out in section 2676 of this revised title, but such section 2676 was eliminated by Senate amend-

## CHAPTER 91—UNITED STATES COURT OF FEDERAL CLAIMS

Sec.
1491. Claims against United States generally; actions involving Tennessee Valley Authority.
1492. Congressional reference cases.
[1493. Repealed.]
1494. Accounts of officers, agents or contractors.
1495. Damages for unjust conviction and imprisonment; claim against United States.
1496. Disbursing officers' claims.
1497. Oyster growers' damages from dredging operations.
1498. Patent and copyright cases.
1499. Liquidated damages withheld from contractors under Contract Work Hours and Safety Standards Act.
1500. Pendency of claims in other courts.
1501. Pensions.
1502. Treaty cases.
1503. Set-offs.
[1504. Repealed.]
1505. Indian claims.
[1506. Repealed.]
1507. Jurisdiction for certain declaratory judgments.
1508. Jurisdiction for certain partnership proceedings.
1509. No jurisdiction in cases involving refunds of tax shelter promoter and understatement penalties.

### § 1491. Claims against United States generally; actions involving Tennessee Valley Authority

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section

10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

[(3) Repealed. Pub.L. 104–320, § 12(a)(2), Oct. 19, 1996, 110 Stat. 3874]

(b)(1) Both the Unites [1] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

(c) Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 with respect to actions by or against the Authority.

(June 25, 1948, c. 646, 62 Stat. 940; July 28, 1953, c. 253, § 7, 67 Stat. 226; Sept. 3, 1954, c. 1263, § 44(a), (b), 68 Stat. 1241; July 23, 1970, Pub.L. 91–350, § 1(b), 84 Stat. 449; Aug. 29, 1972, Pub.L. 92–415, § 1, 86 Stat. 652; Nov. 1, 1978, Pub.L. 95–563, § 14(i), 92 Stat. 2391; Oct. 10, 1980, Pub.L. 96–417, Title V, § 509, 94 Stat. 1743; Apr. 2, 1982, Pub.L. 97–164, Title I, § 133(a), 96 Stat. 39; Oct. 29, 1992, Pub.L. 102–572, Title IX, §§ 902(a), 907(b)(1), 106 Stat. 4516, 4519; Oct. 19, 1996, Pub.L. 104–320, § 12(a), 110 Stat. 3874.)

[1] So in original.

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 21st, 2003, I caused to be served by United States mail, postage prepaid, copies of "DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION" and "APPENDIX" addressed as follows:

> R. Daniel Boyce
> Post Office Box 1990
> Raleigh
> North Carolina 27602-1990

*Karlisha Bethea*

A TRUE COPY:
TEST: APR 4 2006
BRIAN BISHOP
Clerk, U.S. Court of Federal Claims
BY
Deputy Clerk