IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION



| | |
|---|---|
| In re Peanut Crop Insurance Litigation, MDL-1634 ) ) ) ) ) | Master Docket No: 4:05-CV-8H ALL CASES |

ORDER

This matter is before the court on the parties' cross motions for adoption of a damages formula. The parties have filed appropriate responses and replies. In addition, the court conducted a hearing on February 17, 2005, and a status conference on March 18, 2005, at which times the parties addressed all pending issues relating to these motions regarding the formula to be adopted for this case. The parties agree that this damages formula is applicable to all transferred cases. This matter is ripe for adjudication.

This court granted plaintiffs' motions for summary judgment, finding that defendants had breached the insurance contracts with the plaintiffs. Now these cases are before the court on the issue of damages. In a breach of contract action, plaintiffs are entitled to damages to make them "whole," in other words, to place them in as good a position as they would have been but for the breach of contract. LaSalle Talman Bank v. U.S., 317 F.3d 1363, 1371 (Fed. Cir. 2003); Hughes Communication Galaxy, Inc. V. U.S., 271 F.3d 1060, 1066 (Fed. Cir. 2001). However, in general, the

"non-breaching party is not entitled, through the award of damages, to achieve a position superior to the one it would reasonably have occupied had the breach not occurred." LaSalle, 317 F.3d at 1371.

Plaintiffs are entitled to be made whole; however, they are not entitled to a windfall. Benefits received in mitigation of those damages must be taken into account. "When there is a direct relation, in time and in subject matter, between the breach and mitigating events, the damages are reduced accordingly." LaSalle, 317 F.3d at 1371, citing Restatement 2d. of Contract Section 347.

I. **Calculation of Gross Damages:**

    1. **Determining 2002 Insured Quota and Non Quota Amounts**

For purposes of this lawsuit, a Class Member's 2002 quota and non-quota amounts shall be determined as follows:

```
Class Member's 2002 Production Guarantee
     for insured Farm Unit for which loss claimed
x District Specific Percentage of Quota Liability for 2001
= Amount of Class Member's 2002 Insured Quota

Class Member's 2002 Production Guarantee
     for insured Farm Unit for which loss claimed
x District Specific Percentage of Non-Quota Liability 2001
= Amount of Class Member's 2002 Insured Nonquota
```

    2. **Determining Gross Damage Award for Loss of Quota Peanuts**

    a. **2002 Quota Peanut Loss:**

```
Amount of Class Member's 2002 Insured Quota
- Class Member's 2002 Production to Count
= Class Member's 2002 Quota peanut loss in pounds
```

b. **Gross Indemnity for 2002 Quota Peanut Loss:**

The formula for damages in all cases shall be calculated at the rate of $.31 per pound less payment of $.1775 per pound for the 2002 Crop Year to be calculated for those farmers who had been assigned farm poundage quotas for the 2001 Crop Year.

The identical formula shall be used for calculation of damages for all class members in each class.

Accordingly, the gross entitlement for the claimants will be the quota poundage multiplied times $.31 minus the quota poundage times $.1775, or as expressed in a formula:

```
Class Member's 2002 Quota Peanut Loss in pounds
x .1325 ($0.31 minus $0.1775)
= Gross Indemnity on Class Member's 2002 Quota Peanut Loss
```

II. **Adjustments**

A. **Adjustment for Additional Premium owed on Quota Peanuts**

The parties agree that the gross indemnity should be adjusted for additional premiums owed on quota peanuts. This adjustment should be calculated as follows:

```
Amount of Class Member's 2002 Insured Quota
x .1325
x Premium Rate applicable to Class Member on insured Farm Unit
  for which loss claimed
= Additional Premium Owed
```

```
Gross indemnity on Class Member's 2002 Quota Peanut Loss
- Additional Premium Owed
= Adjusted Gross Indemnity for
    Class Member's 2002 Quota Peanut Loss
```

Also, the court finds that the adjusted gross indemnity must be further adjusted if the class member's share in the insured farm unit is less than 100%.

> Adjusted Gross Indemnity for Class Member's 2002 Quota Peanut Loss
> <u>x Class Member's Percentage Share of Insured Farm United</u>
> = Additional Indemnity Owed under Policy for Class Member's 2002 Quota Peanut Loss

> **B. Adjustment for Overpayment of Indemnity on Non-quota Peanut Loss**

The additional indemnity owed under the crop insurance policy for a Class Member's 2002 Quota Peanut Loss shall be reduced by any overpayment of indemnity for a Class Member's 2002 Non-quota Peanut Loss, calculated as follows:

> **1. Determination of Class Member's 2002 Non-quota Peanut Loss:**
>
> Class Member's 2002 Production Guarantee for insured Farm Unit
> − Class Member's 2002 Production to Count
> <u>− Class Member's 2002 loss of Quota Peanut Loss in Pounds</u>
> = 2002 Non-quota Peanut Loss
>
> **2. Determination of overpaid indemnity for Class Member's 2002 Non-quota Peanut Loss:**
>
> 2002 Non-quota Peanut Loss
> <u>x .0175 ($0.1775 minus $0.16)</u>
> = Gross Overpayment of Indemnity on 2002 Non-quota Peanut Loss
>
> **3. Credit for additional premium paid:**
>
> Amount of Class Member's 2002 Insured Nonquota
> x .0175
> <u>x Premium Rate applicable to individual Class Member for insured Farm Unit</u>
> = Overpaid premium on 2002 Non-quota Peanuts

```
  Gross Overpayment of indemnity on 2002 Non-quota Peanut Loss
  - Overpaid premium on 2002 Non-quota Peanuts
  = Adjusted Gross Overpayment of indemnity for Class Member's
      2002 Non-quota Peanut Loss for insured farm unit
```

**4. Adjusted for Class Member's share in insured Farm Unit (if less than 100%):**

```
  Adjusted Gross Overpayment of Indemnity for Class Member's
  2002 Non-quota Peanut Loss for insured Farm Unit
  x Class Member's Percentage Share of insured Farm Unit
  = Overpayment of Indemnity for
        Class Member's 2002 Non-quota Peanut Loss
```

## III. Reductions

Defendants' motion requests certain reductions or adjustments to the individual class member recovery. The plaintiffs object to these reductions.

### A. Quota Buyout

Defendants contend there should be a deduction to the extent that a class member in this lawsuit was an eligible peanut quota holder and received a payment pursuant to 7 U.S.C. § 7959 (the quota buyout). This court finds that the Farm Bill of 2002 did not provide a nexus between quota buyout payments and decreased insurance coverage. The buyout payments were made to landowners only, without regard to whether they were quota holders or whether they had paid for crop insurance. The court finds that the quota buyout is not in any way related to the insurance contract and therefore does not qualify as mitigation of damages. See LaSalle, discussed supra, 317 F.3d at 1371.

Finding no direct relationship between the contract breach and

5

any payments for quota buyout, defendants' motion for a reduction based on the quota buyout is denied.

### B. Direct and Countercyclical Payments

Defendants further contend that, to the extent that a class member in this lawsuit was a historic peanut producer and received a direct payment pursuant to 7 U.S.C. §7953 and/or a countercyclical payment pursuant to 7 U.S.C. § 7954 for the 2002 crop year for peanuts, any additional net indemnity owed the class member under the crop insurance as calculated above should be reduced by the amount of such class member's direct and/or countercyclical payment.

This court finds that the direct and countercyclical payments under the 2002 Farm Bill are unrelated to the peanut insurance contract at issue in this lawsuit. Compensation under the 2002 Farm Bill was afforded to all farmers, regardless of the crop they produced. In addition, these payments were made without regard to any indemnity received for 2002 peanut losses or any indemnity that may be owed under the contract. The court, finding no relationship between these payments and the insurance contract at issue in this litigation, see Lasalle, supra, denies defendants' motion for a reduction based on direct and/or countercyclical payments.

### C. Disaster Relief Payments

Finally, defendants contend that to the extent a class member received a crop disaster payment for loss of the 2002 peanut crop

pursuant to P.L. 108-7, 117 Stat. 538 (section 202, Division N, February 20, 2003) and 7 C.F.R. Part 1480, any additional net indemnity owed the class member under the crop insurance policy as calculated above should be reduced by the amount of the Crop Disaster Payment made for 2002 peanut crop loss. As with quota buyouts and direct and/or countercyclical payments, this court finds that the crop disaster payments are unrelated to the contract breached by the defendants. Therefore, defendants' motion for a reduction based on crop disaster payments is denied.

Accordingly, the formulas set about above shall be used in calculating the total damages due to each individual class member.

Remaining before the court in these cases is plaintiffs' motion for the establishment of a common fund. Plaintiffs seek to have this court order the establishment of a common fund to be followed by the establishment of a special master/independent accountant to disburse said funds. The defendants, however, object to disbursement of funds through a special master/independent accountant. The court has taken this issue under advisement and will rule on this issue in due course.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for adoption of a damages formula is granted in part and denied in part. Defendants' motion for adoption of a damages formula is granted in part and denied in part. The above formula shall be used in

calculating the total damages due to each individual class member.

This 30TH day of March, 2005.

                                                                 MALCOLM J. HOWARD
                                                              United States District Judge

At Greenville, NC
#26

I certify the foregoing to be a true and correct copy of the original.
Fred L. Bor·h III, Clerk
United States District Court
Eastern District of North Carolina
By _____
      Deputy Clerk